## Case No. 3,057.

### COMMERCIAL & SAV. BANK v. CORBETT et al.

[5 Sawy. 172.][1]

Circuit Court, D. Nevada. May 10, 1878.

RECEIVER—REMOVAL OF CAUSE—ORDER OF STATE COURT—RECORD, HOW CERTIFIED — RECEIVER—PLEADING — HOMESTEAD — SECTION·80, ART. 4, NEVADA CONSTITUTION CONSTRUED.

1. When the proper proceedings for the removal of a cause have been taken in the state court, the circuit court has jurisdiction of the cause, for the purpose of granting a provisional remedy, before the first day of the next term on which the party removing the cause, is, by statute, required to enter a copy of the record. Mahoney Min. Co. v. Bennett [Case No. 8,-96S], followed.

2. No order of the state court accepting the petition and bond is necessary to remove a cause.

[Cited in Brigham v. C. C. Thompson Lumber Co., 55 Fed. 884.]

3. Where the clerk of the state court made up the record in detached papers, certifying to each one, and also, that the papers constituted the whole record: *Held*, a sufficient "copy of the record."

4. The facts essential to the appointment of a receiver need not be pleaded, but may be shown by affidavit at the hearing.

5. A prayer for a receiver is unnecessary.

6. The defendants borrowed money to be used in building a hotel on a block of land, and applied it to that purpose: *Held*, that a note for the money and a mortgage of the block to secure it, constituted an obligation for the erection of improvements within the meaning of the section above-mentioned, superior to any homestead claim of defendants.

This is a motion in a suit to foreclose a mortgage, for the appointment of a receiver. The suit was begun in the state court, March 5, 1878. On March 11, without first obtaining leave of court, plaintiff [the Commercial & Savings Bank of San Jose] filed certain amendments to the complaint, and served them on attorneys for defendants [Daniel G. Corbett, William H. Corbett, and others]. These amendments allege the facts deemed necessary to entitle plaintiff to a receiver. March 15, a demurrer to the complaint was filed. Motion for a receiver was made March 11, in the state court, but before a hearing the defendants filed a petition and bond for the removal of the cause to this court. Thereupon, the state court on motion of defendants' attorneys made the following order and entry on its records: "Now comes counsel for defendants, and presents to the court a petition and bond for the transfer of the cause to the circuit court of the United States for the district of Nevada; and, thereupon, on motion of counsel for petitioners, the court approved the bond and accepted the same as sufficient, and ordered the record herein duly certified to the said circuit court; and it is further ordered, that further proceedings in this cause and court be stayed." This order

was made on the first day of the March term of this court, so that the defendants were not required to enter a copy of the record in this court until the first Monday in November, that being the first day of the next term. March 21, the plaintiff moved for, and obtained leave to file a copy of the record in this court for the purpose of applying for the appointment of a receiver, and renewed the motion here. The record filed consists of copies of all papers and minutes in the cause, each separately made out and certified to by the clerk to be a full and correct copy of the original. In addition to these separate certificates, the clerk further certifies as follows: "I, Alfred Helm, clerk etc., do hereby certify that the accompanying papers, to wit: the complaint" (etc., naming each paper), "are full and true copies of all the papers on file and of record in said state district court, and of all the indorsements thereon, and that the said accompanying papers are true and correct copies of the said record, and all the papers, records, documents and files in said above-entitled cause, as the same appear on file and of record in the clerk's office in said state district court." These papers so certified are filed in this court as a copy of the record in the cause. At the hearing it appeared that the defendants are insolvent, and that the mortgaged property is an inadequate security. The mortgages each contain a stipulation or covenant that in any action to foreclose, a receiver may be appointed. Since the execution of the mortgages the defendants, D. G. and W. H. Corbett, and their wives, have filed claims to homesteads in that part of the mortgaged premises described as block 56. The value of this block is variously estimated by the witnesses at from twenty to thirty-six thousand dollars.

Robert M. Clarke, for plaintiff.

Jonas Seely, for defendants.

HILLYER, District Judge. The defendants object to the appointment of a receiver on several distinct grounds, the first being that this court cannot take any jurisdiction in this cause before the first day of the next term which will be the first Monday of November next. This objection raises a question which can hardly be considered an open one in this circuit, and is overruled upon the authority of Mahoney Min. Co. v. Bennett [Case No. 8,96S]. In that case the circuit court for the district of California took jurisdiction of a cause removed, before the "first day of the next term," for the purpose of granting a provisional injunction. Counsel for defendants denies that this case states the law correctly, and pressed this court earnestly to adopt his view. Regarded simply as a question of power, I presume it can not be denied that the circuit court for Nevada, presided over by the district judge, has the power to disregard a decision of the circuit judge made in the California dis-

[1] [Reported by L. S. B. Sawyer, Esq., and here reprinted by permission.]

trict. A district judge while sitting alone in the circuit court has the same power as any other judge sitting in the same court. Robinson v. Saterlee [Id. 11,967]. While this is so I do not think the district judge should forget that if the circuit judge were present his opinion would control. When his opinion has been embodied in a judicial decision, it ought not to be departed from without most cogent reasons. But in the present instance my own judgment is in concurrence with that of the circuit judge. It would certainly be a great grievance if a case like this could be put in the position counsel contend it is, for more than six months. According to him it is "hung up" beyond the reach of either this or the state court. It is practically nowhere, and the plaintiff is in a far worse position than if he had begun no suit. I have no doubt in my own mind that the moment the jurisdiction of the state court ceases, by reason of presenting to it the statutory bond and petition, the jurisdiction of the United States court attaches. Whenever the purposes of justice require it, the circuit court is bound to take cognizance of the cause.

The second objection is that the case is not properly here, because the state court did not, by its order, accept the petition as well as the bond. This acceptance, it is said, is a judicial act which must be made of record in the state court, and can only be proven to this court by a transcript of that record. The statute provides that after the making and filing of the petition and bond, "it shall then be the duty of the state court to accept such petition and bond and proceed no further in such suit." It does not appear, however, that the jurisdiction of the circuit court depends upon the circumstance that the state court does or does not do this duty. An order, not in terms accepting the bond or petition but directing a stay of further proceedings, would sufficiently show that the state court had accepted both petition and bond, if such acceptance were a condition precedent to the acquiring of jurisdiction of this court. But in any case which is a proper one to be removed, this court can obtain the record and jurisdiction of the cause although the state court not merely omits making an order accepting the petition and bond, but even when it refuses to accept them and attempts to proceed with the suit. The provisions of section 7 of the act of 1875 [18 Stat. 472], giving to the circuit courts of the United States power to issue a certiorari to the state court, commanding it to make return of the record in any cause removed, or to compel the prosecutor to file a copy of his complaint, demonstrate, it seems to me, that the jurisdiction of the circuit court does not depend upon the action of the state court, nor, indeed, upon the filing of a certified transcript of the record. The suit being one which by reason of its parties or subject-matter the circuit court is capable of exercising jurisdiction over, that jurisdiction is acquired by the filing of a statutory petition and bond.

The third objection is to the manner of certifying the record. The clerk of the state court instead of attaching all of the papers together, and certifying to the whole as a copy of the record, has certified to each paper separately, and has also accompanied the papers sent to this court as the record with another certificate in which each paper is named, and they are stated to be the whole record. This course was taken because it has been found convenient to have the papers in the case detached during its progress in the circuit court. The statute speaks of "entering a copy of the record." How that record is to be made up, whether in one book, or on separate sheets of paper, is not stated. In this case I see no reason to doubt that a copy of the record has been entered in this court; at least there is enough to show a cause within its jurisdiction and properly removed. Each paper filed is so authenticated as to be prima facie evidence in this court of what it purports to be. Under such circumstances the circuit court will not remand a cause even if it should appear that the copy of the record entered is imperfect, but will take the necessary action to complete the record.

It is next objected that the amendments cannot be considered on this motion because filed without leave of court. Although no good reason whatever can be given for allowing an amendment to be filed as of course, after demurrer and before answer, and requiring leave of court to file it before demurrer, yet the state practice act seems to require a construction of that kind, and if so the amendments to the complaint were not properly filed. It is unnecessary to decide the question, for a receiver may be appointed upon the complaint and affidavits without the amendments. The complaint is complete as a bill to foreclose a mortgage, but it does not pray for the appointment of a receiver and does not show the facts that the property is an inadequate security, and the mortgagors insolvent. The amendments were filed to set up these facts and pray a receiver. A receiver may be appointed although there is no prayer for one in the bill. Daniell, Ch. Pr. p. 1726; High, Rec. § 83. In this latter authority it is also said that it is not essential that the facts upon which the application is based be set forth in the pleading, but it is sufficient if they appear by affidavit upon the hearing. Section 88. A receiver, says the supreme court of Kansas, may be appointed in an action to foreclose a mortgage if the mortgaged property is insufficient to discharge the mortgage debt. In such case all that the petition need contain is the ordinary averment for the foreclosure of a mortgage. The relation of the value of the property to the debt may be shown by affidavit. Hottenstein v. Conrad, 9 Kan. 435. This rule seems to be a satisfactory one, where as in this case the

appointment of the receiver is merely a provisional remedy and not the chief object of the suit.

These objections, which do not touch the merits, being overruled, the case is a strong one for a receiver. The defendants have not kept their covenants in the mortgages to pay interest, taxes, and insurance. The validity of the mortgage debt is not questioned, nor is it denied either that the property mortgaged is an inadequate security, or that the defendants are insolvent. In addition, there is the covenant in both mortgages that in any action to foreclose the plaintiff may have a receiver of the rents appointed. The power of the court to appoint a receiver of block 56, in which the defendants claim homesteads, was denied on the argument, but the questions arising out of the claim of the defendants to homesteads were reserved for future argument and decision, with the understanding that if the court should appoint a receiver of any of the property, such receiver should not be put in possession of any portion of block 56 actually used by defendants for homesteads, including the portions of the Arlington block used for a hotel, before a decision of the question reserved. There must be a receiver appointed of all the mortgaged premises, except the dwelling-houses and the hotel, and it is so ordered.

Afterwards the following decision was rendered upon a motion to put the receiver in possession of the premises withheld from him on the first motion.

Block 56, in which the defendants claim homesteads, is a piece of land one hundred and seventy feet square with an alley ten feet wide running through it north and south. The block contains ten lots eighty feet by thirty-four. On the west half are the dwelling-houses of defendants with some out-buildings. On the east half is a brick store and the building called the Arlington House, a portion of which is used for a hotel,. and the rest for business purposes, not connected with the hotel. The brick store and that portion of the Arlington House not used for a hotel are occupied by tenants, except one room, which is vacant. The west half of the block, and the hotel premises, it is agreed, are worth twenty-five thousand dollars. The value of the homestead exemption may not exceed five thousand dollars. On August 19, 1876, there stood on the east half of the block, on lots 5 and 8, a frame building called the Corbett House, occupied by defendants. The rest of that half on which was situated two stores, a milliner's shop and a saloon, was leased to tenants. On that day a fire destroyed the Corbett House and the stores, and subsequently all that portion of the east half of the block, except the brick store, was cleared preparatory to building a new hotel. The first mortgage for twenty thousand dollars was made on October 4, 1876. At that time no new buildings had been erected, and the defendants were residing with their families in the two dwelling-houses on the west side of the block. The sum of twenty thousand dollars secured by the first mortgage was borrowed for the purpose of building the Arlington House, and it was so used.

The understanding between the plaintiff and the defendants, says Mr. Wm. Corbett in his testimony, was that the money should be deposited with Rice, agent of Wells, Fargo & Co. in Carson, and applied to the building of improvements on the Arlington lot, and this was done. Upon this state of facts there are two grounds upon which, in my judgment, the receiver is entitled to possession of the hotel:

First, and chiefly, because the note for twenty thousand dollars, and the mortgage securing it, constitute an "obligation contracted for the erection of improvements." The constitution of Nevada (article 4, § 30), while exempting a homestead, provides that "no property shall be exempt from sale * * * for the payment of obligations contracted for the purchase of said premises, or for the erection of improvements thereon." The argument for defendants is that this clause only refers to vendors, mechanics, laborers and material-men, and their liens. But I can see nothing in the language which warrants a court in so restricting the meaning of the very comprehensive word "obligation." Whether the defendants contracted the obligation directly to the material-men, laborers and mechanics, or borrowed the money of a bank for the purpose of paying those men, the obligation is as much in the one case as the other one contracted for the erection of improvements. The inquiry is for what, and not to whom, was the obligation contracted. If I am right in this, there is no need of deciding the much discussed question as to the extent of the homestead interest of defendants in block 56. For in respect to the mortgage for twenty thousand dollars the whole block is subject to sale, as it would be were there no question of homestead in the case.

In the second place, if I am wrong in this construction of the constitution, and block 56 is to be treated as exempt from sale to the extent of the homestead rights of the defendants, still the mortgage attaches as a valid lien upon the excess over ten thousand dollars in value, which excess is placed at fifteen thousand dollars. Under existing circumstances, no portion of the block of the value of five or ten thousand dollars can be set apart; at least the case has, so far, proceeded upon this assumption. It will, therefore, in the course of this suit, become necessary to sell the whole of block 56. The defendants, if their homestead claims are sustained to their full extent, cannot retain as homesteads any specific portion of block 56. If the motion of the receiver is now denied the defendants will retain possession, during the suit, of property worth twenty-five thousand dollars, when their exemption could

not at most amount to over ten thousand dollars. If the order is granted the defendants will have comfortable homes until the sale, which must take place in any event. By the order asked, the plaintiff will be protected, and no injustice done to defendants. No rights are determined by such an order. The receiver will take possession as an officer of the court, and will hold the rents and profits received for whoever shall hereafter appear entitled to them. If it shall ultimately appear that the defendants are entitled to homesteads of five thousand dollars each out of the block, a ratable proportion of the rents can be paid to them. On the other hand, if they are not so entitled, and are permitted to remain in possession of the hotel and receive the rents pending this suit, the plaintiff is injured without remedy.

Let an order be entered that the receiver be let into possession of the premises occupied by the defendants as a hotel.

[NOTE. On the final hearing there was a decree for complainant. Case No. 3,058, next following.]